IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>　　　　　　　　　Plaintiff, )<br> )<br>　　　v. )<br> )<br>AIRGAS USA, LLC, and AIR LIQUIDE )<br>LARGE INDUSTRIES U.S. LP )<br>　　　　　　　　　Defendants. )<br> ) | Civil Action No.  4:20-cv-1495 |

## COMPLAINT

The United States of America ("United States"), by the authority of the Attorney General, and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency (the "EPA"), files this Complaint and alleges as follows:

## NATURE OF THE ACTION

1.      This is a civil action for civil penalties and injunctive relief brought pursuant to Section 113(b)(2) of the Clean Air Act ("CAA"), 42 U.S.C. § 7413(b)(2), against Airgas USA, LLC ("Airgas"), and Air Liquide Large Industries U.S. LP ("Air Liquide") (collectively "Defendants"), for violations of CAA Sections 112(r)(1) and 112(r)(7), 42 U.S.C. §§ 7412(r)(1) and 7412(r)(7), and the Chemical Accident Prevention Provisions at 40 C.F.R. Part 68 ("Chemical Accident Prevention Provisions"), in connection with Defendant Airgas' facility located at 11426 W. Fairmont Pkwy, La Porte, Texas ("La Porte #1), and Defendant Air Liquide's facilities located at 11450 W. Fairmont Pkwy, La Porte, Texas ("La Porte # 2),

Highway 332, 2120 Victoria St., Freeport, Texas ("Freeport"), and 11777 Bay Area Blvd.,

Pasadena, Texas ("Bayport").

2. On February 9, 2013, the La Porte #1 facility experienced explosions and a fire

(the "Incident") resulting in the release of substances regulated under Section 112(r)(3) of the

Act, 42 U.S.C. § 7412(r)(3), and listed in 40 C.F.R. § 68.130, Tables 1, 2 and 3. As a result of

the Incident, one employee was killed and another employee suffered severe burns.

3. In 2015, the EPA conducted facility inspections at all four of the above gas

facilities, and the inspections revealed violations of CAA Section 112(r), 42 U.S.C. § 7412(r),

and the Chemical Accident Prevention Provisions at each facility.

4. Pursuant to CAA Section 113(b)(2), 42 U.S.C. § 7413(b)(2), the United States

seeks the assessment of civil penalties and injunctive relief based on the Defendants' violations

of CAA Section 112(r), 42 U.S.C. § 7412(r), and the Chemical Accident Prevention Provisions

at the La Porte #1 and #2, Bayport and Freeport facilities.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action pursuant to 42

U.S.C. § 7413(b), and 28 U.S.C. §§ 1331, 1345, and 1355.

6. Venue is proper in this judicial district pursuant to Section 113(b) of the Act,

42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and (c) and 1395. Defendants do business in,

and these claims arose within, this judicial district.

## AUTHORITY AND NOTICE

7. The United States Department of Justice has the authority to bring this action on

behalf of the EPA under 28 U.S.C. §§ 516 and 519, and under 42 U.S.C. § 7605(a).

8.      Notice of commencement of this action has been given to the State of Texas pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b).

## THE PARTIES

9.      Plaintiff is the United States of America, acting at the request of the EPA.

10.     Defendant Airgas is a limited liability company incorporated in the state of Delaware and authorized to do business in the State of Texas.

11.     Defendant Air Liquide is a limited partnership formed in Delaware and authorized to do business in Texas.  It owns and operates the La Porte #2 facility, the Freeport facility and the Bayport facility.

12.     At all times relevant to the Complaint, each Defendant is a "person" as defined in CAA Section 302(e), 42 U.S.C. § 7602(e), and within the meaning of CAA Section 113(b), 42 U.S.C. § 7413(b).

13.     The La Porte #1 facility conducted blending and filling operations of specialty gases for customers.

14.     The La Porte #2 facility produces hydrogen from natural gas using steam methane reforming technology in its Steam Methane Reforming ("SMR") unit.

15.     The Bayport facility produces hydrogen from natural gas using steam methane reforming technology in its SMR unit.

16.     The Freeport facility operates a Hydrogen Recovery and Purification Unit ("HPU") that recovers and purifies byproduct hydrogen during its production process.

## STATUTORY AND REGULATORY BACKGROUND

3

17.     The CAA was enacted to "protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population" 42 U.S.C. § 7401(b)(1).

18.     The primary objective of CAA Section 112(r) is to "prevent the accidental release and to minimize the consequences of any such release of any [listed] substance… or any other extremely hazardous substance." 42 U.S.C. § 7412(r)(1).

### A. CAA Section 112(r)(1) – the General Duty Clause

19.      Section 112(r)(1) provides, in pertinent part:

> The owners and operators of stationary sources producing, processing, handling or storing [any substance listed pursuant to CAA Section 112(r)(3), or any other extremely hazardous substance] have a general duty . . . to identify hazards which may result from such releases using appropriate hazard assessment techniques, to design and maintain a safe facility taking such steps as are necessary to prevent releases, and to minimize the consequences of accidental releases, which do occur.

20.     The term "accidental release" is defined in CAA Section 112(r)(2)(A), 42 U.S.C. § 7412(r)(2)(A), to mean "an unanticipated emission of a regulated substance or other extremely hazardous substance into the ambient air from a stationary source."

21.     The term "stationary source" is defined in CAA Section 112(r)(2)(C), 42 U.S.C. § 7412(r)(2)(C), to mean, in pertinent part, "any buildings, structures, equipment, installations or substance emitting stationary activities . . . located on one or more contiguous properties . . . under the control of the same person, and from which an accidental release may occur."

### B. CAA Section 112(r)(7) – Accident Prevention

22.     Section 112(r)(7) provides, in pertinent part:

> (A) In order to prevent accidental releases of regulated substances, the Administrator is authorized to promulgate release prevention, detection, and correction requirements which may include monitoring, record-keeping, reporting, training . . . , and other design, equipment, work

4

practice, and operational requirements.

* * * * *

(B)(ii) The regulations under this subparagraph shall require the owner or operator of stationary sources at which a regulated substance is present in more than a threshold quantity to prepare and implement a risk management plan to detect and prevent or minimize accidental releases of such substances from the stationary source . . . in order to protect human health and the environment. Such plan shall provide for compliance with the requirements of this subsection.

23.     Pursuant to 42 U.S.C. § 7412(r)(7), the EPA promulgated regulations in 1994.

These regulations are published at 40 C.F.R. Part 68.

24.     Pursuant to Section 112(r)(7) of the CAA, 42 U.S.C. § 7412(r)(7), and 40 C.F.R.

§§ 68.10(a) and 68.150, the owner or operator of a stationary source that has more than a

threshold quantity of a regulated substance in a process, as determined under § 68.115, shall

comply with the requirements of 40 C.F.R. Part 68, including, but not limited to, the submission

of a Risk Management Plan ("RMP") to the EPA.  The RMP shall be submitted not later than the

latest of the following dates:  June 21, 1999, three years after the date on which such regulated

substance is first listed under 40 C.F.R. § 68.130, or the date on which the regulated substance is

first present in a process above the threshold quantity.

25.     A "regulated substance" includes any substance listed in CAA Section 112(r)(3),

42 U.S.C. § 7412(r)(3).  Also, pursuant to CAA Section 112(r)(3), 42 U.S.C. § 7412(r)(3), the

EPA published lists of additional regulated substances and their threshold quantities in Tables 1,

2, 3 and 4, to 40 C.F.R. § 68.130.

26.      "Process," is defined in 40 C.F.R. § 68.3 to mean "any activity involving a

regulated substance, including any use, storage, manufacturing, handling, or on-site movement of

such substances, or any combination of these activities.  For the purposes of this definition, any

group of vessels that are interconnected, or separate vessels that are located such that a regulated

substance could be involved in a potential release, shall be considered a single process."

27.      "Covered process" means "a process that has a regulated substance present in

more than a threshold quantity as determined under [40 C.F.R.] § 68.115." 40 C.F.R. § 68.3.

28.      The Chemical Accident Prevention Provisions separate covered processes into

three categories, designated as Program 1, Program 2, and Program 3.  Each Program Level sets

forth increasingly stringent accident prevention requirements for owners and operators of

stationary sources with covered processes that fall within the respective programs.  The covered

processes at the La Porte #1, La Porte #2, Bayport, and Freeport facilities are subject to the

Program 3 requirements described below in paragraph 29.

29.      A Program 3 covered process is subject to the most stringent risk management

requirements under the Chemical Accident Prevention Provisions. Pursuant to 40 C.F.R. §

68.12(d), the owner or operator of a stationary source with a covered process that is subject to

the Program 3 prevention requirements must undertake certain tasks including, but not limited to,

the development and implementation of written operating procedures as provided in 40 C.F.R. §§

68.65-87.

### C. CAA Enforcement Provisions

30.      CAA Section 113(b), 42 U.S.C. § 7413(b), provides that whenever a person

violates any requirement or prohibition of Subchapter I of the CAA (42 U.S.C. §§ 7401-7515),

the Administrator of the EPA "shall . . . in the case of any . . . owner or operator of an affected

source. . . commence a civil action for a permanent or temporary injunction, or to assess and

recover a civil penalty" of not more than $25,000 per day for each violation, or both . . . ."

Pursuant to the Civil Monetary Penalty Inflation Adjustment Rule, 40 C.F.R. § 19.4, the

maximum statutory penalty amount increased to $37,500 for violations occurring from January 12, 2009 until November 2, 2015.

### GENERAL ALLEGATIONS

31.     At all times relevant to this Complaint, Defendant Airgas, was the "owner and operator" of the La Porte #1 facility within the meaning of CAA Section 112(r), 42 U.S.C. § 7412(r), and within the meaning of the Chemical Accident Prevention Provisions.

32.     At all times relevant to this Complaint, Air Liquide was the "owner and operator" of the La Porte #2 facility, as well as the Freeport and Bayport Pasadena facilities, within the meaning of CAA Section 112(r), 42 U.S.C. § 7412(r), and within the meaning of the Chemical Accident Prevention Provisions.

33.     Each of the four facilities is a "stationary source" as defined in CAA Section 112(r)(2)(C), 42 U.S.C. § 7412(r)(2)(C) and 40 C.F.R. § 68.3.

34.     At all times relevant to this Complaint, Defendants produced, processed, handled, and stored "regulated substances" as defined in CAA Section 112(r)(2)(B), 42 U.S.C. § 7412(r)(2)(B), and as listed in 40 C.F.R. § 68.130, Tables 1, 2, 3 and 4, at their respective facilities.

35.     The La Porte #1 facility sits on an approximately 140-acre parcel of land.  Dozens of businesses with hundreds of employees are located within a three-mile radius of the facility, and more than 15,000 residents live within a five-mile radius of the facility.  This facility, which operated on a 24-hour basis, blended different specialty gases and industrial gases with widely varying chemical characteristics pursuant to customer orders.  The blending facility was largely destroyed in the 2013 explosion and never resumed operations.

36.     In its operations at the La Porte #1 facility, Defendant Airgas utilized propane, propylene, ethane, ethylene, chlorine, isobutene, methane, hydrogen and hydrogen sulfide, which are regulated hazardous substances listed in 40 C.F.R. § 68.130.

37.     At all times relevant to this Complaint, Defendant Airgas was subject to the General Duty Clause of CAA Section 112(r)(1), regarding the prevention of "accidental releases" at its facility, as defined in CAA Section 112(r)(2)(A), 42 U.S.C. § 7412(r)(2)(A) and 40 C.F. R. § 68.3.

38.     At all times relevant to this Complaint, Defendants were subject to the requirements of the Chemical Accident Prevention Provisions at their facilities and were required to timely submit a RMP for the covered processes at their facilities.

39.     The EPA inspections conducted on April 14-16, 2015 at Laporte #1, on April 15-16 at La Porte #2, on June 29-July 1, 2015 at Bayport, and on July 13-14, 2015 at Freeport revealed violations of the Chemical Accident Prevention Provisions at Defendants' facilities and provide the basis for the Claims for Relief stated in this Complaint.

## The Incident

40.     On the morning of February 9, 2013, at the La Porte #1 facility, there were explosions and a fire.

41.     The Incident occurred in the Gravimetric Unit ("Unit") at the facility, where the blending or filling of cylinders with flammable gases and liquids took place.  The gases used for blending are located in cylinders staged outside of the Unit, cylinders inside of the Unit, and gas sources that are piped directly into the Unit from storage vessels.  At the time of the Incident, cylinders located both in and outside of the Unit contained substances including propane,

propylene, ethane, ethylene, chlorine, isobutene, methane, hydrogen and hydrogen sulfide, which are listed substances in 40 C.F.R. § 68.130.

42.     Subject to a reasonable opportunity for further investigation or discovery, the Incident took place during an attempt by two plant employees to blend a proprietary chemical called "Flam Ox," a hydrocarbon and oxygen mixture.  The Incident caused the physical destruction of much of the building housing the Gravimetric Unit, as well as the gas cylinders located therein, and caused the release of listed substances identified above.  The resulting fire burned for more than several hours.

43.     Subject to a reasonable opportunity for further investigation or discovery, no alarm sounded prior to or during the Incident to indicate a gas leak in or around the Unit.

44.     Video footage from the surveillance camera present in the Unit indicates that the incident occurred in that location.

45.     Once the fire began in the Unit, it fueled multiple explosions.  The sources of the explosions were cylinders containing flammable gasses as well as other vessels located nearby.

46.     There were 13 employees working on the day of the accident.  Seven employees were tending to operations outside of the building and six were inside of the building.  Of the six employees working inside the building, two employees were working in the Unit, completing gas work-order blends, while another employee was working nearby.

47.     According to Airgas, the Unit was equipped with three carbon monoxide ("CO") sensors.  The sensors were programmed to give a red warning light at 50 ppm, which is the Occupational Safety and Health Administration permissible exposure limit for carbon monoxide. But the sensors were not designed or equipped to detect lower explosive limits ("LEL") for other

gases or to provide an audible alarm, which would have immediately let operators know that conditions in the Unit were approaching unsafe limits and emergency conditions.

48.     According to witness statements of employees present at the facility at the time of the Incident, there was no alarm that sounded before, during or after the Incident.

49.     Of the two employees working in the Unit at the time of the Incident, one was killed and the other sustained severe burns or an "injury," as that term is defined at 40 C.F.R. § 68.3.  The Unit was destroyed, as was most of the building containing the Unit.  The facility has not operated since the date of the Incident.

50.     On the day of and the day before the Incident, Defendant Airgas failed to take adequate steps to design and maintain a safe facility, in violation of the General Duty Clause and it failed to take steps to "minimize the consequences of any accidental releases which do occur" in violation of 42 U.S.C. § 7412(r)(1).

51.     During the Incident, regulated substances listed at 40 C.F.R. § 68.130 were released into the ambient air from the facility.

52.     The release of these regulated hazardous substances, which included regulated flammable substances, constituted an "accidental release" under CAA Section 112(r)(2)(A), 42 U.S.C. § 7412(r)(2)(A).

53.     Following the Incident, the EPA conducted an inspection of the La Porte #1 facility on April 14-16, 2015.

54.     At all relevant times, the maximum quantity of hydrogen in process at the facility exceeded the threshold quantity specified in 40 C.F.R. § 68.130.

55.     At all relevant times, the hydrogen in process at the facility was located in vessels such that releases from them could affect other storage vessels containing listed substances.

56.     At all relevant times, the storage vessels containing listed substances constituted a covered process as defined under 40 C.F.R. § 68.3 at this facility.

57.     On the day of and the day before the Incident, the La Porte #1 facility did not have a RMP in place at the facility on February 9, 2013, as the EPA determined during its April 14-16, 2015 inspection.

**FIRST CLAIM FOR RELIEF**
**General Duty Clause-Failure to Design and Maintain a Safe Facility**
**(42 U.S.C. § 7412(r)(1))**
**La Porte #1 Facility**

58.     Plaintiff incorporates by reference paragraphs 1 through 57 of the Complaint.

59.     Prior to, and on, February 9, 2013, Defendant Airgas operated the blending operation at the La Porte #1 facility in violation of the General Duty Clause under CAA Section 112(r)(1), 42 U.S.C. § 7412(r)(1).

60.     Defendant Airgas violated CAA Section 112(r)(1), 42 U.S.C. § 7412(r)(1), by failing to design and maintain a safe facility and to ensure operation of an adequate or working emergency notification system to minimize the consequences of any accidental release of a listed substance.

61.     Defendant Airgas knew or should have recognized the risk of an accidental release of listed or extremely hazardous substances, including regulated flammable substances, used in the fill operation in the Unit.

62.     Feasible means existed by which the Defendant Airgas could have eliminated or reduced this hazard, including, for example, ensuring the proper functioning of a device adequate to detect the release of listed substances and to provide an audible alarm to alert individuals present of the need to evacuate to a safe location.

63.     No alarm sounded before, during or after the Incident.

64.     As a result of the Defendant Airgas's failure to design and maintain a safe facility, the accidental releases of regulated hazardous substances, which occurred in the Unit area of the facility, went undetected.

65.     Had the sensors properly alerted employees for the presence of CO and other regulated gases, the personnel at the facility could have been made aware of an imminent explosion and the consequences of the release could have been minimized.

66.     Defendant Airgas's failure to take adequate steps to design and maintain a safe facility or to minimize the consequences of an accidental release of regulated substances at the facility violated the General Duty Clause of CAA Section 112(r)(1), 42 U.S.C. § 7412(r)(1).

67.     Pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), as amended, Defendant Airgas is liable for civil penalties of up to $37,500 per day for each such violation.

## SECOND CLAIM FOR RELIEF
### RMP Submission
### (40 C.F.R. § 68.150)(b)(3))
### La Porte #1 Facility

68.      Plaintiff incorporates by reference paragraphs 1 through 57 of the Complaint.

69.      40 C.F.R. 68.150(b)(3) requires that the owner or operator of a facility shall submit the first RMP no later than the date on which a regulated substance is first present above a threshold quantity for a covered process.

70.     Under 40 C.F.R. 68.130 (Table 3), the threshold quantity of liquid hydrogen is 10,000 lbs. for a covered process.

71.     During its April 14-16, 2015 inspection of the La Porte #1 facility, the EPA determined that the maximum quantity of hydrogen in process at the facility exceeded the threshold quantity specified in 40 C.F.R. § 68.130.

72.     Through its failure to timely submit an RMP for the hydrogen storage vessel covered process, Defendant Airgas violated the requirements set forth in 40 C.F.R. 68.150(b)(3).

73.     Pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), as amended, Defendant Airgas is liable for the civil penalties of up to $37,500 per day for each such violation.

**THIRD CLAIM FOR RELIEF**
**Operating Procedures for SMR Unit (Addressing Temporary**
**and Emergency Operations)**
**(40 C.F.R. § 68.69(a)(1)(iv))**
**La Porte # 2 Facility**

74.     Plaintiff incorporates by reference paragraphs 1 through 57 of the Complaint.

75.     The SMR unit at the La Porte #2 facility is a "covered process" as defined in Paragraph 28 and 40 C.F.R. § 68.3.  The SMR unit is used to manufacture hydrogen and operates under severe operating conditions of high pressure and temperature.

76.     40 C.F.R. § 68.69(a)(1) requires an owner or operator to "develop and implement written operating procedures that provide clear instructions for safely conducting activities involved in each covered process consistent with the process safety information" and to address the steps for each operating phase including initial startup, normal operations, temporary operations, emergency shutdown, emergency operations, normal shutdown and startup following a turnaround, or after an emergency shutdown.

77.     During the EPA's April 15-16, 2015 Inspection, it determined that Defendant Air Liquide failed to establish written procedures for emergency operations of the SMR unit, in violation of the requirements set forth in of 40 C.F.R. § 68.69(a)(1)(v).

78.     Pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), as amended, Defendant Air Liquide is liable for injunctive relief and civil penalties of up to $37,500 per day for each such violation.

**FOURTH CLAIM FOR RELIEF**
**Operating Procedures for SMR Unit (Addressing Operating Limits)**
**(40 C.F.R. § 68.69(a)(2))**
**La Porte #2 Facility**

79.     Plaintiff incorporates by reference paragraphs 1 through 57 of the Complaint.

80.     The SMR at the La Porte #2 facility is a "covered process" as defined in

Paragraph 28 and 40 C.F.R. § 68.3.

81.     40 C.F.R. § 68.69(a)(2), requires an owner or operator to "develop and implement

written operating procedures that provide clear instructions for safely conducting activities

involved in each covered process consistent with the process safety information" and to address

operating limits, including the consequences of deviation and the steps required to correct or

avoid a deviation.

82.     During the EPA's April 15-16, 2015 Inspection, the EPA determined that for the

SMR unit, Defendant Air Liquide did not develop and implement written operating procedures

for operating limits or for the consequences of deviation from those limits, and steps required to

correct or avoid a deviation in violation of the requirements of 40 C.F.R. § 68.69(a)(2).  This

violation was corrected on May 8, 2015.

83.     Pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), as amended, Defendant

Air Liquide is liable for injunctive relief and civil penalties of up to $37,500 per day for each

such violation.

**FIFTH CLAIM FOR RELIEF**
**Timely RMP Submission**
**(40 C.F.R. § 68.150)(b)(3))**
**La Porte # 2 Facility**

84.     Plaintiff incorporates by reference paragraphs 1 through 57 of the Complaint.

85.     40 C.F.R. 68.150(b)(3) requires that the owner or operator of a facility shall submit the first RMP no later than the date on which a regulated substance is first present above a threshold quantity in a covered process.

86.     Defendant Air Liquide's first RMP submission for the La Porte # 2 Facility was dated March 21, 2013.

87.     However, the SMR unit first held a flammable mixture of methane and hydrogen above a threshold quantity and was  a "covered process" as defined in Paragraph 28 and 40 C.F.R. § 68.3, at the time the unit started up in January 2012.  This information was disclosed to the EPA during the April 14-16, 2015, facility inspection.

88.     Therefore, Air Liquide should have submitted its RMP at or before the time the unit was started up in January 2012.

89.     Through its failure to timely submit an RMP for the SMR unit process at the facility, Defendant Air Liquide violated the requirements set forth in 40 C.F.R. 68.150(b)(3).

90.     Pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), as amended, Defendant Air Liquide is liable for civil penalties of up to $37,500 per day for each such violation.

**SIXTH CLAIM FOR RELIEF**
**Operating Procedures for SMR Unit (Addressing Operating Limits)**
**(40 C.F.R. § 68.69(a)(2))**
**Bayport Facility**

91.     Plaintiff incorporates by reference paragraphs 1 through 57 of the Complaint.

92.     The SMR unit located at the Bayport facility is  a "covered process" as defined at Paragraph 28 and 40 C.F.R. § 68.3.

93.     40 C.F.R. § 68.69(a)(2), requires an owner or operator to "develop and implement written operating procedures that provide clear instructions for safely conducting activities involved in each covered process consistent with the process safety information" and to address

15

operating limits, including the consequences of a deviation from those limits and the steps required to correct or avoid a deviation.

94.     During the EPA's June 29-July 1, 2015 Inspection of this facility, the EPA determined that Defendant Air Liquide did not list operating limits, consequences of deviation from the limits, and steps required to correct or avoid a deviation addressed within each procedure, for the SMR unit, in violation of the requirements set forth at 40 C.F.R. § 68.69(a)(2). This violation was corrected on October 20, 2015.

95.     Pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), as amended, Defendant Air Liquide is liable for injunctive relief and civil penalties of up to $37,500 per day for each such violation.

**SEVENTH CLAIM FOR RELIEF**
**Timely RMP Submission**
**(40 C.F.R. § 68.150)(b)(3))**
**Bayport Facility**

96.     Plaintiff incorporates by reference paragraphs 1 through 57 of the Complaint.

97.     40 C.F.R. § 68.150(b)(3) requires that the owner or operator of a facility shall submit the first RMP no later than the date on which a regulated substance is first present above a threshold quantity in a covered process.

98.     Defendant Air Liquide's first RMP submission for the facility was dated July 1, 2013.

99.     The SMR at the La Porte #2 facility is a "covered process" as defined in Paragraph 28 and 40 C.F.R. § 68.3.

100.    During the EPA's June 29-July 1, 2015 inspection of this facility, the EPA discovered that the SMR unit first held a flammable mixture of methane and hydrogen above the threshold quantity at the time the unit started up in January 2006.

101.    Defendant Air Liquide did not submit its first RMP on the date which a regulated substance is first above the threshold quantity.

102.    Through its failure to timely submit an RMP for the SMR process at the facility, Defendant Air Liquide violated the requirements set forth in 40 C.F.R. 68.150(b)(3).

103.    Pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), as amended, Defendant Air Liquide is liable for civil penalties of up to $37,500 per day for each such violation.

**EIGHTH CLAIM FOR RELIEF**
**Operating Procedures (Addressing Operating Limits)**
**(40 C.F.R. § 68.69(a)(2))**
**Freeport HPU Facility**

104.    Plaintiff incorporates by reference paragraphs 1 through 57 of the Complaint.

105.    The HPU located at this facility is identified as a "covered process" as defined at Paragraph 28 and 40 C.F.R. § 68.3.  The HPU produces hydrogen from a recovery process that operates under high temperature and pressure.

106.    40 C.F.R. § 68.69(a)(2) requires an owner or operator to "develop and implement written operating procedures that provide clear instructions for safely conducting activities involved in each covered process consistent with the process safety information" and to address operating limits including the consequences of deviation and steps required to correct or avoid a deviation.

107.    During the EPA's July 13-14, 2015 inspection of this facility, the EPA discovered that Defendant Air Liquide did not list operating limits, the consequences of deviation from the limit, and steps required to correct or avoid a deviation for the HPU unit.  Therefore, Defendant Air Liquide violated the requirements set forth at 40 C.F.R. §68.69(a)(2).  This violation was corrected on October 21, 2015.

17

108.     Pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), as amended, Defendant

Air Liquide is liable for injunctive relief and civil penalties of up to $37,500 per day for each

such violation.

### NINTH CLAIM FOR RELIEF
### Timely RMP Submission
### (40 C.F.R. § 68.150)(b)(3))
### Freeport HPU Facility

109.     Plaintiff incorporates by reference paragraphs 1 through 57 of the Complaint.

110.     The HPU located at this facility is identified as a "covered process" as defined at

Paragraph 28 and 40 C.F.R. § 68.3.

111.     40 C.F.R. 68.150(b)(3) requires that the owner or operator of a facility shall

submit the first RMP no later than the date on which a regulated substance is first present above

a threshold quantity in a covered process.

112.     Defendant air Liquide's first RMP submission for the facility was dated

September 13, 2013.

113.     However, the HPU unit held the flammable constituents methane and hydrogen

above a threshold quantity beginning in January 2012.  This information was disclosed to the

EPA by facility employees during the September 23, 2015, EPA inspection of this facility.

114.     Defendant Air Liquide did not submit its RMP on the date which a regulated

substance is first above the threshold quantity.

115.     Pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), as amended, the

Defendants are liable for civil penalties of up to $37,500 per day for each such violation.

### PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests that this Court:

A.      Enter judgement in favor of the United States and against Defendants, Air Liquide

Large Industries U.S., LP, and Airgas USA, LLC for the Claims in this Complaint;

B.      Enjoin Defendant Air Liquide Large Industries U.S., LP, from any and all

ongoing and future violations of the applicable provisions of CAA Section 112(r), 42 U.S.C. §

7412(r), and the Chemical Accident Prevention Provisions at 40 C.F.R. Part 68, at its facilities;

C.      Order Defendant Air Liquide Large Industries U.S., LP to take other appropriate

actions to remedy, mitigate, and offset the harm to public health and the environment caused by

the violations of the CAA alleged in this Complaint;

D.      Assess civil penalties against Defendants Air Liquide Large Industries U.S., LP,

and Airgas USA, LLC in an amount of up to $37,500 per day for each violation of the CAA;

E.      Award the United States its costs and expenses incurred in this action; and

F.      Grant the United States such other relief as the Court deems just and proper.


Respectfully submitted,

KAREN DWORKIN
Deputy Chief
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice

 s/ Samuel D. Blesi
SAMUEL D. BLESI
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, DC  20044-7611
Sam.Blesi@usdoj.gov

RYAN PATRICK
United States Attorney
Southern District of Texas

 _s/ Daniel D. Hu_
DANIEL D. HU
Assistant United States Attorney
Chief, Civil Division
SD Texas ID 7959
Texas bar number 10131415
1000 Louisiana, Suite 2300
Houston, TX 77002
Ph: (713) 567-9518
Daniel.Hu@usdoj.gov

OF COUNSEL:
Jacob A. Gallegos
Assistant Regional Counsel
Office of Regional Counsel, 6RC-EA
United States Environmental Protection Agency, Region 6
1445 Ross Avenue, Suite 1200
Dallas, Texas  75202-2733